IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MIGUEL A. ESTRELLA, JR.** | : | |
| | : | Civil Action No. 1:06-CV-1340 |
| **Plaintiff** | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| **KAREN HOGSTEN, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM AND ORDER

Miguel A. Estrella ("Estrella"), an inmate formerly confined at the Low Security Correctional Institution at Allenwood ("LSCI Allenwood"), in White Deer, Pennsylvania, commenced this pro se Bivens[1] styled civil rights action pursuant to 28 U.S.C. §1331 on July 10, 2006. (Doc. 1.) Estrella contends that his Fifth Amendment rights under due process were violated when prison officials transferred him from one facility to another. He further contends that prison officials attempted to "cover up" this violation by "forging" his detention order. In addition, he claims that prison officials failed to provide him with adequate medical care relating to a hernia. He seeks compensatory and punitive damages and injunctive relief. Presently ripe for disposition is a motion to dismiss the complaint and for summary judgment, filed on behalf of several prison officials from LSCI-Allenwood and the Federal Correctional Institution at Allenwood ("FCI-Allenwood"). For the reasons set forth below, the motion to dismiss and for summary judgment will be granted.

---

[1] Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Bivens stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." Butz v. Economou, 438 U.S. 478, 504 (1978).

I.      **Statement of Facts**

Estrella arrived at FCI-Allenwood on February 19, 2004. On April 14, 2006, Estrella was placed in the Special Housing Unit ("SHU") of LSCI-Allenwood, pending an investigation by Special Investigative Services ("SIS") and transfer to another institution.[2] (Doc. 20-2, p.4, ¶ 5.) He remained in the SHU until October 17, 2006, when he was transferred to the Federal Correctional Institution in Ray Brook, New York.[3]

A.     **Confinement in the SHU**

On July 5, 2006, Estrella submitted an informal resolution form to LSCI-Allenwood staff alleging that on June 29, 2006, he received an administrative detention order ("ADO") containing inaccurate information. (Doc. 20-2 at 10.) Specifically, he claimed that the ADO indicated that he had received a copy of the ADO on April 14, 2006, when in fact he had never received such a copy. (Id.) He alleged that defendants Pierce and Jurasich had committed fraud, and requested that the ADO be corrected to reflect that he first received it on June 29, 2006. (Id.) On July 12, 2006, staff informed Estrella that he had been provided with a copy of the ADO on June 29, 2006, because the original April 14, 2006, ADO could not be located. (Id.) However, the reproduced ADO, dated June 29, 2006, did reflect the correct date that Estrella arrived in the SHU. (Doc. 20-2 at 12.)

---

[2] Pursuant to 28 C.F.R. § 541.22, an inmate may be placed in administrative detention when the inmate ". . . is pending an investigation of a violation of Bureau regulations; . . . [or] is pending transfer." 28 C.F.R. § 541.22(a). Prison staff are required to deliver within twenty-four (24) hours of the inmate's placement in administrative detention an administrative detention order detailing the reasons for the placement. 28 C.F.R. § 541.22(b).

[3] Estrella is currently incarcerated at the Federal Correctional Institution in Florence, Colorado.

On July 13, 2006, Estrella filed administrative remedy 420834-F1, alleging that the information on the June 29, 2006, ADO was false, and that defendants Pierce and Jurasich had committed fraud. (Doc. 20-3 at 2.) As relief he requested "a new order issued to reflect the correct date (6/29/06), time (8:00 a.m.), and Officer (Yaeger) who issued and/or witnessed that the document was given to [him]." Id. The warden denied this request on September 7, 2006. (Doc. 20-3 at 1.) Estrella appealed to the Regional Office, which granted his appeal on October 13, 2006. (Doc. 20-2 at 29.) In doing so, the Regional Director stated,

> Although there is a question concerning when you received your initial ADO and who provided it to you, there is no dispute that you were initially placed in SHU on April 14, 2006. In an effort to clarify the documentation, a new, revised ADO will be provided to you that clearly indicates the date you receive it, the date you were initially placed in SHU, and why you were placed in SHU.

(Id.) As a result, the amended ADO reflects the date it was prepared, October 19, 2006. (Doc. 20-2 at 14.) Estrella acknowledged receipt of this amended ADO on October 20, 2006. (Doc. 20-2 at 15.) There is nothing in the record indicating that Estrella filed any further appeals relating to this issue.

On September 27, 2006, Estrella filed administrative remedy 428488-F1, alleging that he had been held in the SHU for five months without being told the reason. (Doc. 20-3 at 14.) He also stated that he had not received housing review forms and he had not been interviewed by the Segregation Review Officer ("SRO"). (Id.) The warden denied this request on October 6, 2006. (Doc. 20-3 at 16.) Estrella's appeal, 428488-R1, of this decision is pending before the Regional Office. (Doc. 20-2 at 26.)

B.   **Inadequate Medical Care**

Estrella also claims that prison officials failed to provide him with adequate medical care

3

related to a hernia he developed while in the SHU. He also alleges discrimination in the denial of medical treatment. In support of the instant motion, defendants have provided the following information related to Estrella's medical care.[4] From April 14, 2006, through April 17, 2006, and from May 1, 2006, through May 25, 2006, Estrella was assigned to an upper bunk in the SHU.[5] (Doc. 20-3 at 19.) On June 2, 2006, Estrella reported to sick call complaining of a hernia on his left side.[6] (Id.) He was examined and a consult was written for further evaluation by an outside surgeon. (Doc. 20-3 at 19-20.) On July 7, 2006, Estrella was examined again by medical staff and prescribed a stool softener.[7] (Doc. 20-3 at 20.) On July 11, 2006, Estrella was evaluated by an outside surgeon and surgery to repair the hernia was scheduled. (Doc. 20-3 at 27, 31.) On August 11, 2006, Estrella was again evaluated by medical staff and received a refill

---

[4] Defendants have submitted the declaration of Jim Potope, Assistant Health Service Administrator at LSCI-Allenwood, and supporting exhibits, outlining Estrella's medical care while in the SHU at LSCI-Allenwood. (See Doc. 20-3 at 18-36.) In his brief in opposition to defendants' motion to dismiss and for summary judgment, Estrella contests several of the facts set forth in Potope's declaration. However, the factual dispute is not relevant in light of the court's disposition of the instant motion because, even accepting as true all the facts set forth in the complaint, the motion will be granted due to Estrella's failure to exhaust administrative remedies. See infra.

[5] Inmate quarters history confirms these dates. (See Doc. 20-3 at 23.) However, Estrella claims that he was assigned to an upper bunk from April 14, 2006, through April 27, 2006 only. (See Doc. 22-1 at 5.) However, this factual dispute is not relevant in light of the court's disposition of the instant motion, due to Estrella's failure to exhaust administrative remedies. See infra.

[6] Estrella asserts that he had actually first reported his injury in May of 2006. (See Doc. 22-1 at 5.) However, this factual dispute is not relevant in light of the court's disposition of the instant motion, due to Estrella's failure to exhaust administrative remedies. See infra.

[7] Estrella asserts that he was not examined on this day, but was simply prescribed the stool softener. (See Doc. 22-1 at 6.) However, this factual dispute is not relevant in light of the court's disposition of the instant motion, due to Estrella's failure to exhaust administrative remedies. See infra.

of his pain medication.[8] (Doc. 20-3 at 20.) On August 31, 2006, Estrella had hernia repair surgery. (Doc. 20-3 at 21.) Medical staff subsequently evaluated Estrella on September 1 and 7, 2006, and found the wound was healing well. (Id.) Estrella was returned to the SHU on September 7, 2006.

Through the course of his medical treatment, Estrella submitted grievances pertaining to his care. On June 16, 2006, Estrella submitted an informal resolution form to LSCI-Allewood staff, complaining of his pain due to the hernia and inquiring into his medical treatment based on his detention status. (Doc. 20-3 at 13.) On June 21, 2006, staff informed Estrella that he had been referred for a surgical consult, and that his medical needs would be addressed regardless of his holdover status. (Id.)

On July 21, 2006, Estrella filed administrative remedy 421122-F1, complaining of his pain due to the hernia and the delays in his medical treatment. (Doc. 20-3 at 11.) On August 10, 2006, the warden denied Estrella's request, informing him that the surgeon did not consider his repair to be of an emergent nature, and that surgery would be scheduled. (Doc. 20-3 at 12.)

On August 21, 2006, Estrella appealed to the Regional Office. In his appeal, 421422-R1, Estrella claimed that he had been denied medical treatment based on his holdover status. (Doc. 20-3 at 9.) He stated, "I have clearly been discriminated and forced to endure this severe pain until my captors find it at their convenience to take me to a hospital." (Id.) On September 19, 2006, the Regional Office granted his appeal based on the fact that Estrella had undergone hernia

---

[8] Estrella asserts that he was not examined on this day, but only spoke with a staff member. (See Doc. 22-1 at 6.) However, this factual dispute is not relevant in light of the court's disposition of the instant motion, due to Estrella's failure to exhaust administrative remedies. See infra.

repair surgery on August 31, 2005.  (Doc.20-3 at 8.)  Estrella filed no further appeals.

## II.     Discussion

The Prison Litigation Reform Act ("PLRA") requires a prisoner to present his claims through an administrative grievance process before seeking redress in federal court.  The act specifically provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  A prisoner must exhaust administrative remedies as to any claim that arises in the prison setting, regardless of any limitations on the kind of relief that may be gained through the grievance process.  See Porter v. Nussle, 534 U.S. 516, 532 (2002); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001).  "[I]t is beyond the power . . . of any . . . [court] to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."  Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (quoting Beeson v. Fishkill Corr. Facility, 28 F. Supp 2d 884, 894-95 (S.D.N.Y. 1998) (citing Weinberger v. Salfi, 422 U.S. 749, 766 (1975)).  The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement."  Nyhuis, 204 F.3d at 71.  The PLRA also mandates that an inmate "properly" exhaust administrative remedies before filing suit in federal court.  Woodford v. Ngo, 126 S.Ct. 2378, 2387 (2006).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  Id. at 2386.  Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to

address complaints internally before allowing the initiation of a federal case." Id. at 2387 (quoting Nussle, 534 U.S. at 525). Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004).

Further, the court recognizes that most circuit courts are in agreement that a prisoner may not satisfy the PLRA's exhaustion requirement by exhausting administrative remedies *after* initiating suit in federal court. See Johnson v. Jones, 340 F.3d 624, 627-28 (8th Cir. 2003) (holding that, "the district court must look to the time of filing, not the time the district court is rendering the decision, to determine if exhaustion has occurred. If exhaustion was not completed at the time of filing, dismissal is mandatory."); McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002) (affirming dismissal of inmate's complaint who was in the process of exhausting his administrative remedies); Medina-Claudio v. Rodiguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002) (affirming dismissal when inmate failed to exhaust the administrative remedies in place); Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001) (affirming dismissal of inmate's complaint because he failed to exhaust his administrative remedies on each of his claims, although some were exhausted during the pendency of his litigation); Jackson v. Dist. of Columbia, 254 F.3d 262, 269 (D.C. Cir. 2001) (affirming dismissal of inmates' complaint because they had begun, but not yet exhausted, the prison grievance procedure); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999) (dismissing inmate's complaint because he filed his federal complaint before allowing the administrative process to be completed); Perez v. Wisconsin Dep't of Corrections, 182 F.3d 532, 538 (7th Cir. 1999) (remanding for dismissal and reversing the district court's refusal to dismiss when, at the time the district court was ruling on the motion to dismiss, the inmate had fully

exhausted his administrative remedies but had not done so at the time of filing).  While the Third Circuit Court of Appeals has not yet issued a precedential opinion following this circuit court consensus, in a non-precedential opinion issued just last year, the Third Circuit Court found that the lower court had properly dismissed the plaintiff's complaint because his exhaustion attempt took place after he filed his Bivens claim.  Oriakhi v. United States, 165 Fed. Appx. 991 (3d Cir. 2006).  The Oriakhi court stated, "The fact that he completed the administrative review process before the District Court reached the exhaustion question is of no consequence.  Indeed, there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court."  Oriakhi, 165 Fed. Appx. at 993 (citing Johnson, 340 F.3d at 627-28).

Furthermore, a prisoner does not have to allege in his complaint that he has exhausted administrative remedies.  Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).  Failure to exhaust available administrative remedies is an affirmative defense.  Id.  Therefore, it must be pleaded and proven by the defendants.  Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002).

An inmate may challenge any aspect of his or her confinement using the BOP's administrative remedy procedure, which is set forth at 28 C.F.R. §§ 542 *et seq*.  An inmate first must informally present his complaint to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for administrative relief.  28 C.F.R. § 542.13(a).  If unsuccessful at informal resolution, the inmate may raise his complaint with the warden of the institution where he is confined.  Id. at § 542.14(a).  If dissatisfied with the response, he may then appeal an adverse decision to the Regional Office and the Central Office of the BOP.  Id. at §§ 542.15(a) and 542.18.  No administrative appeal is considered finally exhausted until a

decision is reached on the merits by the BOP's Central Office.

Turning to the instant matter, defendants have filed a motion to dismiss and for summary judgment, asserting that Estrella's claims with regard to his confinement in the SHU do not rise to the level of a constitutional violation, and that he failed to exhaust his administrative remedies with regard to his claim of inadequate medical care while in the SHU. The court will address the motion using the well-established standards for summary judgment and motion to dismiss.

### A. Standard of Review - Motion for Summary Judgment

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-51 (1986). When deciding a motion for summary judgment, the court views the facts in the light most favorable to the nonmoving party, who is "entitled to every reasonable inference that can be drawn from the record." Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000). However, the nonmoving party may not simply sit back and rest on the allegations in the complaint, but must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Id. at 322.

### B. Analysis - Confinement in the SHU

In their brief in support of the motion to dismiss and for summary judgment, defendants claim that the only issue which Estrella has exhausted is his claim that the April 14, 2006, administrative detention order was fraudulent and was not timely provided to him, in violation of his due process rights. However, in his brief in opposition to the motion, Estrella alleges that this exhausted issue "is also intertwined with plaintiff's transfer from FCI-Allenwood to LSCI-Allenwood as well as his continued confinement in the SHU." (Doc. 22 at 11.) Viewing the facts in the light most favorable to Estrella, the court finds that defendants are entitled to an entry of summary judgment because Estrella's "intertwined" claims do not rise to the level of a constitutional violation.

Estrella's claims here stem from his transfer from FCI-Allenwood to the SHU in LSCI-Allenwood. He first alleges that the transfer violated his due process rights by implicating his protected liberty interests. (See Doc. 22 at 13.) In doing so, Estrella states that he "was neither initially informed of the reason for his placement in the SHU at another prison, nor was he subsequently permitted to be heard regarding his continued confinement there." (Id.) In addition, he provides a thorough description of how conditions in the SHU differ from those in general population. (Id.)

To assert a due process claim here, a plaintiff must identify the denial of a liberty interest. See Sandin v. Conner, 515 U.S. 472 (1995). However, no protected interest in a particular custody status is provided by the Constitution. E.g., Montanye v. Haymes, 427 U.S. 236, 242 (1976); Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460-61 (1989). "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause

does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye, 427 U.S. at 242.

It is also well-settled that a prisoner has no justifiable expectation that he will be incarcerated in a particular prison. Olim v. Wakinekona, 461 U.S. 238, 245 (1983) ("Just as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, he has no justifiable expectation that he will be incarcerated in any particular State"); Montanye v. Haymes, 427 U.S. 236, 242 (1976) ("The Clause does not require hearings in connection with transfers whether or not they are the result of the inmate's misbehavior or may be labeled as disciplinary or punitive"). Although these cases addressed the liberty interests of state prisoners in not being transferred, the principles espoused therein also apply to federal prisoners. Brown-Bey v. United States, 720 F.2d 467, 470 (7th Cir. 1983) (holding, in an action involving transfers of a federal prisoner from one federal prison to another, that no due process claim was stated); Cardenas v. Wigen, 921 F. Supp. 286, 291-92 (E.D. Pa. 1996) (denying petitions for habeas corpus by federal prisoners on grounds that there is no due process interest in a certain custodial classification or in remaining at a particular federal prison); Lee v. Carlson, 564 F. Supp. 1048, 1051 (M.D. Pa. 1983) (holding that "[t]he transfer of a plaintiff from FCI-Memphis to USP-Lewisburg does not raise due process rights"). Further, under the applicable federal statute, the Bureau of Prisons may "at any time" direct transfer of a prisoner from one prison to another without a reason. 18 U.S.C. § 3621(b).

Applying these principles, the court concludes that Estrella has no liberty interest in his place of confinement, and thus has failed to assert a claim which rises to the level of a constitutional violation. Moreover, he has failed to establish that the transfer resulted in

11

restrictions placed upon him that will impose "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. Therefore, Estrella is not entitled to relief based on his claims of constitutional violations stemming from his transfer from FCI-Allenwood to LSCI-Allenwood and his continued confinement in the SHU.[9]

In connection with these claims, Estrella also claims that his constitutional rights were violated because prison officials "forged" his administrative detention order and did not timely provide it to him. However, this claim also fails because it does not rise to the level of a constitutional violation.

As set forth above, Estrella was transferred from FCI-Allenwood to the SHU at LSCI-Allenwood on April 14, 2006. Estrella claims that prison officials violated their own regulations by not providing him with an administrative detention order until June 29, 2006.[10] He further alleges that the June 29, 2006 order was fraudulent because it indicated that Estrella had received the order initially on April 14, 2006. However, following his appeal to the Regional Office, Estrella was provided with a corrected second copy of the order reflecting the proper date of receipt, which he attested to receiving on October 20, 2006.

Estrella is not disputing the date he was placed in administrative detention, rather simply the method by which he was officially informed of the detention. As such, the court construes

---

[9] The court also notes that Estrella's appeal, 428488-R1, to the Regional Office relating to his continued confinement was pending as of the date defendants filed the instant motions. Thus, clearly this claim would be subject to dismissal because Estrella had not exhausted his administrative remedies with respect to this claim prior to commencing this action in federal court. See Oriakhi, 165 Fed. Appx. at 993.

[10] Pursuant to BOP regulations, prison staff are required to deliver within twenty-four (24) hours of the inmate's placement in administrative detention an administrative detention order detailing the reasons for the placement. 28 C.F.R. § 541.22(b).

his claim as one that the mere failure of prison officials to follow their own regulations alone is a constitutional violation. However, there is no such controlling constitutional principle. As stated by the United States Court of Appeals for the Fifth Circuit, "the mere failure to give notice in time, but with complete and adequate due process procedures after the notice actually was given, cannot be taken as establishing a violation of the United States Constitution." Hernandez v. Estelle, 788 F.2d 1154, 1158 (5th Cir. 1986).[11] Consequently, defendants are entitled to summary judgment on these claims dealing with his confinement in the SHU.

### C. Standard of Review - Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a claim that fails to assert a basis upon which relief can be granted. FED. R. CIV. P. 12(b)(6). In the context of a motion to dismiss under Rule 12(b)(6), the court must accept as true all of the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom. Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000) (citing Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)). Although the court is generally limited in its review to the facts alleged in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (stating that, although a district court ruling on a motion to dismiss may not generally consider matters extraneous to the pleadings, a "document integral to or

---

[11] In Hernandez, the plaintiff asserted a constitutional violation based on prison official's failure to comply with the time limit in the regulations under which an inmate is notified that a publication is being withheld from him. See Hernandez, 788 F.2d at 1157. While the facts differ from the instant case, the implication remains that prison officials' failure to follow their own regulations alone does not establish a constitutional violation.

explicitly relied upon in the complaint" may be considered "without converting the motion [to dismiss] into one for summary judgment") (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1224 (1st Cir. 1996)).

The court will not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that "no relief could be granted under any set of facts that could be proved consistent with the allegations." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)). "The complaint will be deemed to have alleged sufficient facts if it adequately put the defendants on notice of the essential elements of the plaintiff's cause of action." Langford, 235 F.3d at 847. The court must grant leave to amend before dismissing a complaint that is merely deficient. See Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

### D.   Analysis - Inadequate Medical Care

There is no question that Estrella failed to exhaust his administrative remedies concerning his medical treatment prior to filing this action. Specifically, he filed suit in this court on July 10, 2006, twelve (12) days *before* filing his first administrative remedy, 421422-F1, at the institution level with respect to this claim on July 21, 2006. (See Doc. 20-3 at 11.) Again, Estrella may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies *after* initiating suit in federal court. See Johnson v. Jones, 340 F.3d 624, 627-28 (8th Cir. 2003); see also Oriakhi, 165 Fed. Appx. at 993 (Not Precedential). Consequently, this claim is subject to dismissal, without prejudice, due to Estrella's failure to exhaust his remedies prior to bringing his suit in federal court.

**III.    Conclusion**

Based on the foregoing, defendants' motion for summary judgment as to his claims related to his confinement in the SHU will be granted because Estrella's claims here do not rise to the level of a constitutional violation.  Furthermore, with respect to his claim of inadequate medical care, the court finds that Estrella failed to exhaust his administrative remedies pursuant to the PLRA prior to commencing this action in federal court, thus, this claim will be dismissed.  An appropriate order follows.

**IV.    Order**

**AND NOW**, this 16th day of July, 2007, upon consideration of defendants' motion to dismiss and for summary judgment (Doc. 17), and for the reasons set forth above, **IT IS HEREBY ORDERED THAT**:

1. Defendants' motion for summary judgment (Doc. 17) is GRANTED as to plaintiff's claims related to his confinement in the SHU;

2. Defendants' motion to dismiss (Doc. 17) is GRANTED, without prejudice, as to plaintiff's claim of inadequate medical care;

3. The Clerk of Court is directed to ENTER judgment in favor of defendants and against plaintiff on the claims related to plaintiff's confinement in the SHU;

4. The Clerk of Court is directed to CLOSE this case; and

5. Any appeal from this order is DEEMED frivolous and not in good faith.  See 28 U.S.C. § 1915(a)(3).

s/ Yvette Kane
YVETTE KANE, Chief Judge
Middle District of Pennsylvania
